IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KELLY L. MARTIN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 3:17-cv-00869 |
| | )    JUDGE TRAUGER |
| RANDY MANTOOTH, et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

Before the court is plaintiff Kelly Martin's application to proceed *in forma pauperis* (IFP). (ECF No. 2.) Because it appears from the plaintiff's submission that she is unable to pay the filing fee, her application (ECF No. 2) is **GRANTED**.

### I. INITIAL REVIEW STANDARD

Having granted the plaintiff leave to pursue this suit without prepaying the filing fee, the court must conduct an initial review of the complaint under 28 U.S.C. § 1915(e)(2) and dismiss it or any portion of it that is frivolous or malicious, fails to state a claim for which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. If an action is filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as construed by *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that "the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under § 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)"). "Accepting all well-pleaded

allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly,* 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks and citation omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir.2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

The plaintiff asserts that her complaint is "for damages under the United States Constitution, specifically portion of Amendment One and Amendment Four." (ECF No. 1, at 1.) The court therefore construes this to be an action for alleged violations of the plaintiff's federal constitutional rights pursuant to 42 U.S.C. § 1983. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

## II. FACTUAL ALLEGATIONS

The plaintiff alleges that she was employed as a legal secretary at the law firm of which the defendant is a member from June 2009 until January 2011, when she resigned shortly after she filed a complaint with the Equal Employment Opportunity Commission (EEOC) for disability-based discrimination. While she was working for the defendant firm, she applied for a position as the defendant Mantooth's paralegal, but he did not hire her for the position. The plaintiff alleges that, during her employment at the firm, she experienced a hostile work environment that caused her "great mental anguish," and that she was diagnosed with post traumatic stress disorder, general anxiety disorder and exacerbation of pre-existing major depressive disorder. The plaintiff does not describe or provide any examples of the hostile work environment or alleged subsequent harassment but refers generally to "immature high school like games," "childlike behavior" and "malicious gossip." In the law firm's response to her EEOC complaint, part of which she attaches to her pleading, the author indicates that the plaintiff's dissatisfaction at the firm centered on her belief that she had become the subject of gossip among coworkers in connection with "intimate details about her personal life" that she had revealed to them. The plaintiff received a right-to-sue letter from the EEOC dated April 11, 2012, but she chose not to

file suit, due to the hardships and humiliation she had suffered during the course of the investigation of her EEOC complaint.[1]

In April 2017, the plaintiff interviewed for a position with a law firm in Clarksville and listed her former supervising attorney at the defendant's firm as a professional reference. The Clarksville firm hired the plaintiff, and on her first day of work there the hiring partner mentioned to the plaintiff that he had had difficulty reaching her former supervising attorney so had discussed her with defendant Mantooth instead. The plaintiff alleges that she never "would have condoned that conversation" due to her history with the defendant. On her fifth day on the new job, the same partner who had checked her references terminated her. As reason for her termination, he said that the plaintiff was not working fast enough. When the plaintiff told him that she was surprised he had hired her at all after speaking with Mr. Mantooth about her, the partner said that he had talked to Mr. Mantooth about a professional matter, but not about the plaintiff. Based on her swift termination and her belief that the Clarksville partner had spoken with Mr. Mantooth about her, the plaintiff concludes that Mr. Mantooth slandered her to the Clarksville partner. Otherwise, the plaintiff asks, "how would [the Clarksville partner] have known the constant body language he exhibited would be offensive to the Plaintiff and further intentionally inflict emotional distress upon her person?" She alleges that the Clarksville partner "knew exactly how to treat the Plaintiff as he was directed by" defendant Mantooth. She accuses defendant Mantooth of sabotaging her employment and describes his behavior as "a type of professional stalking that is not defined by any code specified in this respective State." She alleges that "this type of behavior has been constant since 2009 until the conclusion of the EEOC investigation and beyond."

---

[1] The plaintiff alleges that "the elements of a hostile work environment were found during the EEOC investigation," but the right-to-sue letter, to the contrary, states that, "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (ECF No. 1-1, at 11.) More importantly, regardless of whether the plaintiff was the victim of employment discrimination or harassment between 2009 and 2011, she acknowledges that she consciously elected not to file suit on that claim, and the time within which she might have done so has long since passed.

The plaintiff claims that defendant Mantooth's actions have violated her constitutional rights "against intrusion upon seclusion, invasion of privacy, defamation of character, slander, and . . . being held in a false light." She further claims to base her suit on the Racketeer Influenced and Corrupt Organizations Act (RICO), which she says protects against "crimes of obscenity." She seeks injunctive relief as well as compensatory damages and punitive damages "for the eight years of mockery" by defendant Mantooth.

## III. ANALYSIS

Even assuming that all the facts alleged by the plaintiff are true, she has clearly failed to state a claim under § 1983 for violation of her federal rights. It is "a matter of substantive constitutional law" that "most rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) (quoting *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). Accordingly, private individuals and entities do not act "under color of state law" and become subject to suit under § 1983 unless they are "jointly engaged with state officials in the prohibited action." *Lugar*, 457 U.S. at 941 (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). The plaintiff does not allege any such joint participation between the defendants and any governmental entity in this case. Therefore, even if the constitution provided the rights she claims it does, the defendants cannot be liable for violating them.

The plaintiff also fails to state a claim for any RICO violation. The RICO Act does provide for a private cause of action for "any person injured in his business or property" by a RICO violation. 18 U.S.C. § 1964(c). But it defines "racketeering activity" to mean any act or threat involving a short list of state crimes punishable by imprisonment for more than a year, or any act that is "indictable" under a much longer list of federal criminal statutes. 18 U.S.C. § 1961(1). The plaintiff's vague allegation that she "is made repeatedly a victim of obscenity through inappropriate conduct of body language and malicious gossip" may be an effort to bring her case under the RICO definition's inclusion of certain crimes of obscenity. If so, the effort

fails. The plaintiff does not describe the offensive body language or allege any facts that would even arguably amount to a state felony for "dealing in obscene matter" as provided by § 1961(1). Nor does she allege any facts that would amount to any of the listed federal criminal offenses relating to obscene matter, including producing, importing, or mailing obscene writings or recordings or broadcasting obscene language via radio. *Id.* (citing 18 U.S.C. §§ 1461–1465).

### IV. CONCLUSION

This action is therefore **DISMISSED** for failure to state a federal claim upon which relief can be granted. To the extent the complaint states a claim for any causes of action arising under state law that would otherwise survive the analysis above, the court declines to exercise jurisdiction over them. 28 U.S.C. § 1367(c)(3). Any appeal from this order would not be in good faith as required by 28 U.S.C. § 1915(a)(3).

Entry of this order shall constitute the judgment in this action.

It is so **ORDERED**.

ENTER this 26th day of June 2017.

ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE